Good morning. Tom Schlesinger for the petitioners. May it please the Court to represent five petitioners here, Dr. and Mrs. Kramer, Ms. Anahi Gutierrez, Blue Mountain Management and Marketing, and Private Funding Management. The petitioners in this case have overlapping theories of recovery. First of all, they had vested and superior interests under 853. They had resulting and constructive trust interests, and they also were bona fide purchasers in various respects. Also in this case, the petitioners challenged the criminal forfeiture based upon the non-appropriation of funds, as well as some of the language that was contained in Defendant Kramer's plea agreement, which preceded the ancillary hearing. Turning to the resulting trust first, if the Court can recall, the Cantlay, Foothill, and Chimanez properties were all purchase money resulting trusts. These investments were not gifts. There was clear and convincing evidence presented, if you recall, in particular in Mrs. Kramer's testimony, that she had no intention of giving a gift to her son in the investments that she made in these various properties. And there was corroboration for her testimony. First of all, you had the sworn petition that was on file. Secondly, you had the bank records from her Franklin Templeton account, which was sourced from interest and dividends. Which property or properties are you talking about at this moment? In relation to the resulting trusts, it would be Cantlay, Foothill, and Chimanez. Could you address first? Could you split them out? Because I think they're somewhat different facts for each of them. If you'd start out with Foothill, I would appreciate it. Okay. In regard to Foothill, Mrs. Kramer testified that she paid $194,000 of the purchase price. $44,000 of that was sourced from her Franklin Templeton account, which was an account that she had over the years that she got from interest and dividends under a trust that she had. And then the balance of the $150,000 came from the branch bank and trust account that was sourced from funds that she testified that she had received over time and also funds that came from the Victory Financial Management Services account, which was in her name. Okay. Assuming for a moment that all of those funds are untainted, your argument under Juronek is, well, she's a proportionate owner because she contributed to the purchase price. Right. She has a pro rata or pro tanto interest because she paid $194,000. Right. And heads up to the government, I do not see an answer to that argument in your brief. You may want to say that some of those funds are tainted or whatever, but if those are untainted funds, as I read Juronek, she is entitled pro tanto to a share of the interest in that property. Okay. Now, what about the other properties? Because they're not quite so clean. Well, Cantlay is very similar, Your Honor, because she testified and was backed up by bank records that she made $140,000 investment of the purchase price. But I'm reading now from the district judge's order, and there may be a mistake in here. The district judge says petitioners Gutierrez and Private Funding Management claim. This doesn't say that she's claiming. As to Cantlay, the government did a good job at page 8, actually, of their answering brief to indicate who the claimants were. So as to Cantlay, the claimants were Rosalinda Kramer, her husband, Stuart, and Anna Gutierrez. Anna Gutierrez's claim is based on a construction. It sounds as though the district judge made a mistake, then, in not naming them as claimants. Well, he may have, Your Honor, but it's clear from their petitions that those three individuals made claims to Cantlay. Now, as far as Chimenez, the resulting trust claim is based upon No, stick with me for Cantlay for a minute, because, you know, there's so many factual complications here, it's hard for me to make sure I really understand it. So your argument is that both Kramers contributed money for the purchase of Cantlay? Yes, Your Honor. How much did they contribute? Well, I don't know the exact figure for Andrew Kramer, but I do know the exact figure for Mrs. Kramer, and that's $140,000. And is that disputed? I don't believe so. I think the total purchase price was approximately $263,000. And they purchased that property outright. There was no mortgage on that property, as I understand. And what happens, is there any consequence in the fact that the property has been deeded to Gutierrez and is no longer the property of the defendant? Well, what happened there was that Ms. Gutierrez was the former girlfriend of Andrew Kramer, and so at some point in time, he quitclaimed the property to her. She didn't give any consideration for that, but what she did do was on the same date that she received the property, she issued a grant deed to private funding, because she was going to pay back private funding the amount of money that had been invested in the property by Mrs. Kramer. But my question is headed as the following. If Title had stayed with the defendant, and his mother or his parents had contributed to the purchase price, I get it. That is to say, Jernick then tells me, unless it's something else I don't get, Jernick tells me they have a proportionate interest in the property. But he doesn't keep Title. He gives Title to Gutierrez. How does that affect the analysis about whether there's a resulting trust when he's no longer the Title owner, but somebody else is? Oh, I see. Well, in that case, then you just go strictly to California law as to who's on Title to say that whoever's on Title is the owner of the property, unless there has been some rebuttal. See, but if Gutierrez is the Title owner, that may undercut or maybe entirely disappear the argument under Jernick. Because so long as the defendant was the Title owner, I get it. Jernick says there's a proportionate interest in the person who helped him buy the property. But he's no longer the Title owner. Right. Well, the reason why we are presenting this under a resulting trust basis, in addition to the other forms of recovery, because these are overlapping, is the fact that there was some challenge to the fact that Andrew had deeded this property to Ms. Gutierrez for no consideration. No, I get that. She's not a bona fide purchaser. Right. And not only that, but there was arguments made in the district court concerning the bona fides, so to speak, of that transfer, that he was simply trying to pass Title to that property because he had been arrested. No, not quite arrested. He hadn't been arrested yet, but he was under investigation when that occurred, which was in 2010. And so in response to that... So he's trying to place his assets beyond the reach of the law. I get that. But my question is, under California law, and you so far haven't been able to answer it, is whether or not the Jernick analysis disappears once Title changes hands. I don't believe so because you still have a situation where somebody has made a proportional investment, and if that person is not on Title, then they should be able to make a claim, regardless of who the Title holder is. And you probably don't have a case for that? I haven't seen a case for that in particular. Okay. So, Cantley, now there was one last property you wanted to talk about. The last property was Chimeneas. This was the one that was in a deed of Nevada External Properties LLC, which is an LLC in Andrew Kramer's name, where the Kramers invested $96,711 in mortgage payments. Was this escrow money, or was this mortgage payment after Title? This was mortgage payments after the initial purchase. There's my problem. Well, the resulting... The cases that analyze resulting trusts don't talk... say that it's only the exclusive situation where you have purchase money on the front end, but if you actually make mortgage payments at a later date, that that can also be considered a resulting trust interest. I read the Jernick case. What case gives it to say that it extends beyond supplying money for the purchase? That would be the case of Martin v. Kell, which is the California case that the exclusive property was in. Martin v. Kell, and I discussed the fact that there were specifically identified payments that were made toward the property. Give me that case again. Martin? Martin v. Kell. How do I spell Kell? K-E-H-L. K-E-H-L. And the site? I'm sure it's in your brief. It's in the brief at 145 Callap Third. Okay, 145 Callap. 228. 228. And there was also the case of Gomez v. Kachina at 15 Cal Second, 363, which dealt with the mother claiming an equitable resulting trust based upon payments that she made toward purchases and improvements to the property, which was post the actual acquisition of the property. So what do you, the district judge's answer to that argument is that there needs to be some showing with respect to whether or not the transferee was intended to take or not to take a beneficial interest. That's right. And the judge says the proper showing wasn't made. Well, we believe that it has because of any number of additional facts. You have on the foothill deed the language on the face of the deed that says the grantor and the grantee maintain a proportional interest in the properties. Now, foothill deed, I thought we were talking about Chimaeus. Well, we're talking about Chimaeus at this particular moment. But the point is that the fact that you have this proportional interest language in the foothill deed carries over in terms of her intent as to the other properties. I wouldn't necessarily think that. I mean, if I say da-da-da with respect to this transaction and I don't say da-da-da with respect to the other, it sounds like I didn't say it. And I might not have meant it. Right. But she testified that she had no intention of making a gift. The other thing is that there was arguments by the government that there was a gift presumption. But the gift presumption didn't apply when you had monies paid by her corporations necessarily toward the properties. Or, first of all, you had no gift tax returns that were on file. Now, whose intent matters with respect to whether or not a beneficial interest is transferred? The wording here in the district court's order is kind of tricky. The district court seems to think that Cramer's intent matters, not the contributor of the money. The defendant, Cramer's. Well, here petitioners have not proffered any evidence that Cramer intended not to take a beneficial interest. The district court seems to think that it's the defendant's intent rather than his mother's intent. Is that wrong? I believe that's wrong. I think you have to look at the person who's actually making the payments to see what their intent is. And, you know, in this particular case, you had a defendant who was entered into a plea agreement where he was required to admit that all of these properties were proceeds of his illegal activity. But that was only a presumption that vanished once all of this other evidence was presented. The deed, the language on the deed, the fact that there's no gift tax returns, the fact that some of the money came from corporations rather than parent to son, so there's not that gift presumption, the continuing payments to keep the property going, the mortgages, the taxes, the expenses, the improvements, all of those things, that presumption that there was a gift here then vanishes. And then at that point the cases say that the government has to do a tracing to show that the money that was used toward payment of the properties came from illegal drug trafficking. Your Honor, I'd like to reserve a little bit of time and rebuttal. Sure. Good morning, Your Honors. May it please the Court, Jonathan Gallatin for the United States. Do you want me to jump into the question you asked right away about the Jurenek and the resulting trusts? That seems to me the soft spot in your case. Okay. I think Your Honor asked a really pointed question about whether transferring title extinguishes that claim. Okay. Let's start out with the case that's the best one for you, and that's the Foothill property. Or rather, the hardest case for you, and that's the Foothill property. Okay. So how do you respond on that one? Well, I think, again, the question Your Honor asked about once property is transferred from Andrew Kramer, assuming that Andrew Kramer and the appellants had this agreement that they would, that the appellants would really be the beneficial owners of the property and not Andrew Kramer, once that property is transferred to another, a third party, a corporation, that whatever claim that appellants have would disappear. They might have a claim against Andrew Kramer. I see. So that Foothill argument is the same as the argument that we had with respect to the Cantlie property. Correct. In one case, the Cantlie property goes to Gutierrez. The Foothill property goes to private funding management. The private funding management. All the properties, as the court noted, all were purchased by Andrew Kramer and then immediately transferred to other entities. So any claim anyone would have saying we were partners. I should know this, but I don't. The complications of this case, I confess, from time to time get past me. Who owns private funding management? It's a corporation. I think at this point, at the point in time of the transfer, I believe Andrew Kramer was an officer. At this point, I think it's one of the appellants. No, I don't mean officer. I didn't ask officer. I asked owner. It's a corporation with officers. I don't know who the owner is. But, I mean, at the time of the transfer, Andrew Kramer was both. He was the secretary of the corporation and he was, he essentially transferred the property to himself, is what I'm trying to say. Sounds like he owned it then. Yeah. If one can own a corporation, I guess that's my, that's the question. Sure. If someone can own a corporation, a corporation is a separate entity. You know, you might have taken criminal law. It doesn't sound as though you took corporate law. Yes, you can own a corporation. Okay. So I'm asking who owns the corporation. My guess is that Andrew owned it. At the time, Andrew owned it then. Now he doesn't. You say Andrew owned it then. Do you know or are you just responding to my question? I know it's evidence that is not on the record, but I know that Andrew owned it. Okay. If he owns it, I will treat the transfer as essentially irrelevant. But if he doesn't, then we have the same question on the Fithill property that we do with respect to the Cantley property. The property has been transferred to somebody else, and the question is whether the beneficial interest survives the transfer. And do you have cases that say yes or no? No, I don't, but I think a question you asked earlier is very relevant, that about whose intent are we looking at. If we're looking at the intent of the question. That's a different question. I'd like you to answer the question in front of us right now, and then we can go to that question. Do you have an answer to the question? Do you have any cases, one way or the other, that tells us what happens under the following assumption? Let's assume that we have two parties. One takes title to the property, but the other has contributed half of the purchase price. Under the Juronek case, the person who contributed half of the purchase price has an interest in the property. Got it? That's how I read Juronek. Have you read Juronek? I have. In Juronek, there's a caveat that there has to be an intention that the parties have this joint interest. So that's an important part of Juronek, too. It isn't just someone giving money. There's giving money with the intention that they have this joint interest. And that's what, in this case, getting back to the point of intent, you asked whose intent the Leszczynski case, the California Supreme Court case, is the intent of the parties. So to say that the titled owner's intent isn't titled owner, meaning Andrew Kramer, his intent isn't important or isn't relevant, that flies in the face of California law. Well, the California Evidence Code, 662, specifically says that the titled owner of property is presumed to be the full beneficial owner of the property, absent clear and convincing evidence. So when a property is transferred to someone else and that person is on title, under California law they are presumed, absent clear and convincing evidence otherwise, to be the full beneficial owner of the property. Okay, I get the argument. Okay. Did you want me to go through other properties or do you have questions about the other? I mean, the theories are the same. The theory, the government's theory is that there was no evidence on the record that there was an intent of the parties that a resulting trust arose. You know, it would have been useful if you had given me this argument in your brief. It is in there, but I didn't articulate it well, Your Honor. Well, I looked in vain for a citation to the Jurenek case in your brief. I'm sorry. There are other cases in there that say what I'm trying to say, but we didn't address Jurenek, I apologize. Okay. But the overall argument is that there was no evidence of the intent. No evidence of the joint intent. Correct. And that's where you have to look at the intent of the parties. And that just isn't in the record. There's no evidence. And you look at when Andrew Kramer gets these properties, he transfers them. To me, that's evidence of lack of evidence of intent that someone else should have an interest because he gets them and transfers them to a third party. In addition, there's compelling evidence that there wasn't an intent. There's three instances where we have – there's two, the Hyde Park and the Chimneyas properties. They're also subject to a civil forfeiture case, parallel civil forfeiture case at State. In those cases, in the Hyde Park case and the Chimneyas case, Nevada External Properties came forward and said, we are the true owners of these properties. And those claims – or that claim in that case was signed by the appellant, Rosalinda Kramer. So in that case, she's saying, Nevada External Properties, the title holder, is the true owner of the property. In this case, she's saying, I'm the true owner of these properties. That's pretty strong evidence that there is no intent that she be the true owner of the properties if she says in another parallel civil case that someone else is a true owner of that property. And in addition, the escrow funds, which we haven't really talked about yet, it's like a real property because we're looking at who owns a property. In that case, they're also claiming a resulting trust based on payments made to mediation costs, attorney's fees. And the same applies. In that case, there was a – it was a civil case between Andrew Kramer and a business partner. That case settled. As a result of that settlement, Andrew Kramer was given $525,000. And in that settlement agreement itself, it states that the parties here, too, are the owners of all right, title, and interest in this money. And that settlement agreement was signed on Andrew Kramer's behalf by Rosalinda Kramer. So she signed an agreement that said, Andrew Kramer is the owner of all right, title, and interest in these – in these funds. And that agreement, if the court wants to look, is that the appellant's executive record 143. Okay, I got it. I'm looking at the intent language adjournment. Yeah, okay. So we have at least those three properties where there's – again, the burden at the district court level was on the appellants. So we've got three properties where there was evidence not only of – there was not only lack of evidence of intent, but there was evidence that there clearly wasn't an intent that these people would be beneficial owners of the property because you've got these claims filed in the settlement agreement where they're saying someone else is the owner of the properties. And plus you have for the Cantlay property where Andrew Kramer transfers it to Ms. Gutierrez, that's pretty strong evidence that there's no intent that someone else be the owner because once he gets it, he grant deeds it to someone else. So there's just no evidence in the record of this intent that's needed. And the alternate theory, which really wasn't discussed initially, of the constructive trust, which is a fraud-remedying trust, there's also no evidence in the record that anyone was induced by Andrew Kramer to give him money for these properties. There's no evidence of a wrongful act on his part where he defrauded someone out of their money. I mean, for Ms. Gutierrez, he gave her the property. His wrongful acts were elsewhere. That's exactly right. His wrongful acts were elsewhere. The narcotics trafficking was a wrongful act, but that didn't serve to induce people to do what they did with the properties. I mean, just because it's a wrongful act and just because they did this doesn't mean the two of them come together. And that's why I don't think there's evidence of a constructive trust. I wanted to address briefly one thing in the reply brief that was brought up for the first time in the reply brief, and that was the government and, I guess, the court's reliance, the district court's reliance on hearsay evidence, the civil forfeiture complaint tracing the bank funds. That evidence was – that complaint was moved into evidence by the appellants. It wasn't the government's exhibit. It was the appellant's exhibit. So for them to object that the government relied on hearsay evidence, once you move that into evidence, you can't object to however someone else uses it. And also, if it's hearsay and they didn't object to it, then they waive it. So for two reasons, that's important that the government didn't move that into evidence. That was someone else. Does the court have questions about any of the specific assets, or do you want to – I'm okay. Okay. The – I don't want to just go through this stuff in the brief on the spending amendment and the plea agreement, but are there specific questions about the spending amendment or the plea agreement that you have? I don't want to just rehash what's in there. I don't have anything extra to add to that. I'm okay. Okay, unless there's any further questions, the government will submit on its briefing. Okay, thank you. Thank you, Your Honor. I'd like to comment briefly about the constructive trust argument that, first of all, there was no wrongful act. And then it's been identified in the colloquy here that the wrongful act was the drug trafficking. So what the argument is is basically that when the government falls into the shoes of the defendant at the time of the unjustly enriched, so to speak, by virtue of all of the things that have been done by third parties to improve the value of the property. So when we talk about Anahita Torres, who now faces eviction if she were to lose that property, her investing over $90,000 in improvements in that property came as a result of her belief that that property wasn't going to be subject to forfeiture. And the reason why it became subject... And what basis did she have for believing that it was not subject to forfeiture? Because she had received title to the property. She didn't know that the property was going to be forfeited. She knew that there was an investigation. But like in the Reckmeyer case in the Fourth Circuit, when the father... What knowledge, if any, did she have of the defendant's drug trafficking? She had knowledge of the fact that he ran medical marijuana dispensaries. Now, it was her belief that running medical marijuana dispensaries, if you follow California law, is legal. Yeah, but if she'd asked a lawyer, the lawyer would have said California law is irrelevant to the question of legality under federal law. Well, it actually isn't irrelevant because under Section 542 of the 2016 Appropriations Act, there shouldn't have been a prosecution in the first place. Whether it's prosecuted is a different question as to whether or not it's illegal. Okay. Well, in any event, if she thought that the property was going to be subject to forfeiture, she wouldn't have made all of those improvements. And other parties wouldn't have paid monies toward upkeep, payment of taxes, and so forth. Okay, I get that argument. I've got one question that comes out of the other argument. I'm a little slow, but I think I've got the point now. The argument is that, well, in order for there to be a trust that results because of the payment by, say, Mrs. Kramer to the purchase price, there has to be an intent by both parties, both by Mrs. Kramer and by the defendant, that this result in a proportionate trust. Is that an accurate statement of the law? I don't see a lot of discussion of that in the cases, but I do see, for example, in the Coluccio decision out of the Second Circuit that there was, even though that was a constructive trust case, there was a discussion of the intent of the parties. And in that particular case, they talked about inferences. If the Court can recall the facts of that case, it was only Mrs. Coluccio, the mother, who testified that there was an understanding between the parties, and they called it in the case an implicit understanding, less than an oral agreement with the sign that he would return the monies that she had put forward. I'm less interested in the Second Circuit than I am in California cases, and I'm reading from Jurenek, Jurenek quoting from the Restatement Law of Trusts, there's a resulting trust unless the title owner, and I'm just quoting, unless he manifests an intention that no resulting trust should arise. So if we've got a manifesting from the defendant that there's no resulting trust, there's no resulting trust. That's what Jurenek tells us when it quotes from the Restatement. So the question is, does he manifest the intent that there's no resulting trust? All I can say in response to that is the fact that the resulting trust issue is often resolved when parties are unavailable, because either they don't testify or they're deceased, and so the courts have to look to other evidence to make a determination of intent. This is not such a case. Mr. Kramer is alive and well. Right, but he had no interest necessarily in breaching his plea agreement by maintaining that there was a resulting trust when that would have resulted in a breach. But can we infer from his actions in transferring these properties to third parties that there was no resulting trust that was intended when, in that transfer, he makes no reservation of title or interest at all on behalf of his mother? Or an objection by the people saying, wait, half of that's mine, before you do that. I think that the closest thing to his testimony was written on the deed, the Foothill deed, at the time of transfer, when it talks about the proportional interest of the respective parties, the grantors and the grantees. And I think that that in itself is demonstrative of his understanding that he didn't have total fee interest in the property, that it was a proportional interest only, because it says so in the deed. And therefore, that, along with all the other evidence that we've indicated corroborates Mrs. Kramer's testimony, shows that there was a resulting trust. Thank you. Thank you very much. I thank both sides for their helpful arguments. The case of United States v. Gutierrez, as is listed here, is now submitted for decision.
judges: Graber, W. Fletcher, Owens